# Cases

# THIRD DEPARTMENT

AT

# GENERAL TERM,

## July, 1893.

---

The Wakefield Rattan Company, Respondent, *v.* Shepard Tappan, as Sheriff of Rensselaer County, Appellant.

*False representation — what must be shown to vitiate an executed contract for the sale of goods.*

In an action brought against a sheriff to recover the possession of certain chattels which had been levied upon by him under executions against the vendee of the plaintiff, where the suit is based upon the invalidity of the sale by the plaintiff, because of its having been induced by false representations on the part of the vendee, the judgment debtor, the plaintiff must, in order to sustain his action, establish five distinct propositions: *First*, the representations; *second*, their falsity; *third*, the *scienter* or guilty knowledge of the person making the representations; *fourth*, that the purchaser relied upon and was deceived by the representations; and *fifth*, that damages resulted to him in consequence thereof.

To justify the court in setting aside a sale of a chattel, on the ground of fraudulent misrepresentation by the vendee, where the chattel has been actually delivered, the fraud must be clearly proved; and while fraud may be established by circumstantial evidence, it can only be proved by such circumstances as are irreconcilable with any other theory than that of the guilt of the person accused of the fraud.

A statement made by a member of a firm purchasing goods, to the effect that "the company had had an unusually good holiday business, was prosperous and was doing a nice business and everything was looking promising and its financial condition was all right," will not, in the absence of proof that the party making such representation believed or had reason to believe at the time he made it that it was false, or, without knowledge upon the subject, assumed or intended to convey the impression that he had actual knowledge of its truth

when he had no such knowledge, and that the plaintiff relied upon such representation to his injury, sustain an action for fraud based thereon.

It is error to allow the statement of a mercantile agency, based upon the representations of a bookkeeper of a firm in regard to its financial standing, to be received in evidence where there is no proof of the authority of the bookkeeper to make statements to the agency upon the subject, nor any evidence that the firm knew of such statements having been made at the time of ordering goods; and the acceptance of the goods by the firm, in the absence of such proof does not constitute a ratification of the statements of the bookkeeper.

APPEAL by the defendant, Shepard Tappan, as sheriff of Rensselaer county, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Rensselaer on the 6th day of March, 1893, adjudging the plaintiff to be the owner of and entitled to certain property and the possession thereof, and awarding said property and the possession thereof to the plaintiff, together with costs, and also from an order denying a motion made upon the minutes of the court by the defendant to set aside the verdict and for a new trial, entered in the office of the clerk of Rensselaer county on the 18th day of March, 1893, after a trial before the court and a jury at the Rensselaer County Circuit.

The action was brought by the plaintiff, a corporation organized under the laws of Massachusetts, against the sheriff of Rensselaer county, to recover certain chattels which had been levied upon by the sheriff under judgments against the firm known as the Isaac Keith Company.

*James H. Ryan*, for the appellant.

*Frank S. Black*, for the respondent.

MAYHAM, P. J.:

This action was prosecuted by the plaintiff against the defendant to recover the possession of fifty-four (54) baby carriages and twenty-two (22) brakes, of the value of six hundred and thirty-two dollars and thirty-five cents ($632.35).

The case showed that the property was seized by and held under an execution issued out of the Supreme Court in favor of the National Bank of Troy against the Isaac Keith Company, and the theory of the action was that the Keith Company had no title to the

property sought to be recovered by reason of an alleged fraud claimed to have been perpetrated upon the plaintiff by the Keith Company, in the purchase of such goods.

The case shows that the Keith Company was a firm doing business in Troy, which succeeded to a business formerly carried on by Isaac Keith, and consisted of a copartnership composed of William M. Hyland and Phœbe Link, and at the time of the organization of this copartnership, one Frank Andros, who had been the book-keeper of Isaac Keith, deceased, continued in that capacity in the employment of the Isaac Keith Company. Soon after the Isaac Keith Company commenced carrying on business, this bookkeeper was called upon by one W. C. Daboll, the manager of R. G. Dun Mercantile Agency at Troy, and requested to make a statement of the financial condition of the firm at that time. Pursuant to that request, Andros informed the mercantile agent what the inventory of the firm disclosed, giving in gross the value of the different articles of merchandise, the cash on hand, bills receivable, and the total of such assets; also purporting to give bills payable, and book accounts constituting the liabilities of the firm, and showing net assets of thirty-nine thousand five hundred and twenty-seven dollars and four cents ($39,527.04).

This statement was forwarded to the Edward Russell Company Mercantile Agency in Boston. The mercantile agency also, in the same communication, gave what purported to be the financial standing and business character of the Isaac Keith Company, and the personal and financial character of the members of such firm. This statement was made on the 1st day of March, 1890.

The case also showed that on the 13th of September, 1890, one William A. Coffey, a reporter of the R. G. Dun Company, called on Andros, the bookkeeper of the firm, and received from him further statements in reference to the standing and responsibility of the Isaac Keith Company, which Coffey reported to the Boston mercantile association as follows:

"*September* 13*th,* 1890.

"Mr. Frank Andros, manager, tells us to-day that there has been no change in their affairs since their statement last March. They seem to be doing their share of the business and believed to be holding their own. They are people who are well spoken of personally,

pay their bills with average promptness, and are looked upon as being responsible for their engagements."

The above statement and the said representations were submitted to Seaver, the cash and credit clerk and salesman of the plaintiff, about the 7th or 8th of February, 1891.

The case shows that the house of Isaac Keith had for sometime been in the habit of purchasing goods of the plaintiff. About the 1st of February, 1891, John Brockett, traveling salesman of the plaintiff, called at the store of the Isaac Keith Company, and had a talk with William M. Hyland, a member of the firm, in which the latter stated that they had had an unusually good holiday business, and that the business was prosperous, and the concern was doing a nice business, and everything was looking promising, and its financial condition was all right. Brockett, the agent of the plaintiff, made no examination or inquiries as to how much stock the firm had, and how much in accounts was due and owing to them.

The case discloses no other recommend or statement of the pecuniary standing or responsibility of the Isaac Keith Company, or of the individual members composing that company, prior to the time of making the order for the goods. At that time an order was given by the firm and accepted by Brockett in behalf of the plaintiff for fifty-four (54) baby carriages, with a request that they should be forwarded right along. The order of this class of goods by the Isaac Keith Company previous years was from fifty (50) to four hundred dollars ($400) a year. The order on this occasion was for about six hundred dollars ($600) worth of goods. The goods were delivered and received pursuant to the order and placed in stock in the Isaac Keith Company's store.

The testimony of Frank Andros shows that at the time of making the report to the R. G. Dun Mercantile Agency, the same was a correct statement and inventory of the assets of the Isaac Keith Company, according to his best judgment, deducting $10,000 as a liberal shrinkage on the book account for doubtful debts.

On the 20th of March, 1891, the Central National Bank of Troy recovered a judgment against the Isaac Keith Company for $6,170.93 upon a note of $6,000 given by that company on the 21st of October, 1890, for money loaned. On the 23d day of March, 1891, Elizabeth Hyland recovered a judgment against the Isaac Keith

Company for $3,078.91, being upon a demand note of $3,000 given by that company for borrowed money.

These two judgments constituted the only judgments recovered against the Isaac Keith Company which appear from the evidence. On the 23d of March, 1891, Harriet S. Keith recovered a judgment against William M. Hyland, one of the firm of the Isaac Keith Company, for $5,016.51. This judgment appears to have been recovered on five promissory notes of $1,000 each, made by William M. Hyland to Harriet L. Keith, dated February 3, 1890. On the 23d of March, 1891, judgment was entered in favor of Haywood Brothers against William M. Hyland and Phœbe Link individually, for $593.95. On the 23d of March, 1891, a judgment was entered in favor of Richard Cunningham and entered against Phœbe Link and William M. Hyland for $1,542.01. This judgment was upon a note made by Phœbe Link and indorsed by William M. Hyland, dated December 9, 1890. An execution had been issued on the individual judgments against Harriet L. Keith and William M. Hyland, which was not, however, levied upon the property of the Isaac Keith Company, but was directed to be satisfied out of the personal property of said judgment debtors, or either of them, and did not contain a direction to levy against the property of the Isaac Keith Company.

The evidence shows that the defendant, as sheriff, received and held an execution on the judgment in favor of the Central National Bank, under which he seized and held the property of the Isaac Keith Company, and while so holding the same a mortgage against the Isaac Keith Company in favor of H. B. Claflin & Co. for $4,000 and one for Peter McCarthy of $1,500 against the Isaac Keith Company, were also placed in his hands for collection.

It does not appear from the case that an execution on the Elizabeth Hyland judgment against the property of the Isaac Keith Company had been issued to the defendant at the time of the commencement of the plaintiff's action to replevy the baby carriages.

The total liabilities as appears from the evidence, which were being enforced against the property of the Isaac Keith Company at the time plaintiff commenced this action, were for the $6,190.93 on the bank judgment, and $5,500 on the two chattel mortgages above

referred to, and the aggregate assets as appears from the evidence, including the book of accounts of the Isaac Keith Company, amounted to $47,000.

Assuming, therefore, that the representations made by the Isaac Keith Company's bookkeeper could be held as representations made by the company, and that the statement made by William M. Hyland to the plaintiff's sales agent, Brockett, could be treated as representations of the Isaac Keith Company of their solvency and responsibility, it is difficult to see how such representations. *per se* can be regarded as fraudulent as to the financial ability of the Isaac Keith Company. Confessedly upon this showing, the company was at that time solvent. It is true that it owed debts, but its apparent assets were far in excess of its liabilities. No actions had been commenced against it at the time of its purchase of these goods, and no judgments had been perfected against. it at that time. The two mortgages alone, which were capable of being summarily enforced, seem to constitute the only liability against which the Isaac Keith Company could be compelled to provide at once.

The sale of these baby carriages from the plaintiff to the Isaac Keith Company seems to have been absolute and complete, and the title to these carriages vested in that company, unless at the time of the sale the company practiced such a fraud upon the plaintiff as to render the contract of the sale and the delivery under it void.

Before the plaintiff can recover the possession of the property sold under such circumstances, it must establish five distinct propositions tending to defeat the contract:

*First.* The representations.

*Second.* Their falsity.

*Third.* The *scienter* or guilty knowledge of the person making the representations.

*Fourth.* That the purchaser relied upon and was deceived by the representations.

*Fifth.* The damages resulting to him in consequence thereof.

In *Arthur* v. *Griswold* (55 N. Y. 410), CHURCH, Ch. J., in discussing the question of fraudulent representations in the sale of stocks, where the validity of the sale was challenged on the ground of fraud or of fraudulent representations by the vendor as to the

solvency of the corporation, uses this language: "Such an action cannot be sustained upon misplaced confidence induced by vague surmises. The rules of law require a reasonable degree of certainty as to each requisite necessary to constitute the cause of action, viz., representation, falsity, *scienter*, deception and injury."

And this language was reiterated by ANDREWS, J., in *Brackett* v. *Griswold* (112 N. Y. 467)

And the learned judge adds: "There must have been a false representation, known to be such, made by the defendant, calculated and intended to influence the plaintiff, and which came to his knowledge and in reliance upon which he, in good faith, parted with property or incurred the obligation which occasioned the injury of which he complains. All these circumstances must be found to exist, and the absence of any one of them is fatal to a recovery."

In *Nichols* v. *Pinner & Michael* (18 N. Y. 295), it was held that the mere omission of the purchaser of the goods to disclose his insolvency to the vendor is not a fraud for which the sale may be avoided.

That was an action like this, to recover the possession of personal property sold by the plaintiff to the defendant upon the allegation that the defendant purchased the same fraudulently and with a design not to pay for them. The complaint was for a wrongful detention of the property.

PRATT, J., in delivering the opinion of the court, said: "To constitute a fraud in such cases there must be an intention to cheat, at least there must be an intention to do an act, the necessary result of which will be to cheat and defraud another; but it is clear that such intention is not necessarily inferable from the fact that a man in good credit, going on with his regular business, makes his usual purchases for the purpose of continuing that business after he is made aware that his property is not sufficient to pay his debts, it is not fraudulent in him to make reasonable efforts to retrieve his fortune and to extricate himself from his embarrassment. It is not unnatural that he should cling to the hope that better times would come, that to-morrow should be as this day and much more abundant; and that with this hope, however delusive results may have shown it to be, he should have been impelled to buy more goods, contract new debts, and struggle on until some casualty should precipitate

the catastrophe upon him, and he find himself in hopeless bankruptcy. This is an every-day experience in the commercial world ; and it would be hard indeed if the unfortunate victim of hopes that looked to him at the time as reasonable, must in his misfortunes, be judged by the actual, instead of the possible results. The authorities do not sustain any such doctrine, but the reverse."

And the learned judge in this case in further discussing the question uses this language : "Fraud must be proved affirmatively. The presumption is always in favor of innocence, and not of guilt. The evidence should, therefore, be direct and strong, which would authorize the repudiation of a contract on the ground of fraud, especially in the case of an executed contract of sale, where the goods have been delivered and become mingled with the mass of the purchaser's other property."

The cases just cited proceed upon the theory that the purchaser knew or had reason to believe himself insolvent at the time of making the purchase. There is no evidence in this case that the Isaac Keith Company or the members of that firm had any reason to suppose that firm insolvent. The evidence, so far as it discloses the apparent condition of the firm, shows net assets above any liabilities which are disclosed by the evidence upon the inventory or estimate made by Andros to Daboll to amount to $39,524. These were firm assets and primarily liable for the firm 'debts, and which must be applied to the firm debts before any can be applied upon the individual debts of the individual members of the firm.

It is difficult upon this showing to see how the members of the firm could have known, or even suspected, that the firm was insolvent and unable to pay its liabilities at the time of purchasing these baby carriages. It was incumbent on the plaintiff, before it could repudiate the contract of sale, to show affirmatively facts and circumstances tending to prove that the representations made by the bookkeeper at the time he was inquired of by the mercantile agency, and the representation of William M. Hyland at the time of ordering the goods of plaintiff's sales clerk, were, to the knowledge of the persons making such representation, false or fraudulent. The facts disclosed by the evidence would tend rather to prove them innocent than guilty of any such false representation. The evidence, therefore, capable of an innocent interpretation, cannot be

used to establish guilt. (*Morris et al.* v. *Talcott*, 96 N. Y. 100; *Constant* v. *University of Rochester*, 133 id. 640; *Fenno* v. *Hannan*, 32 N. Y. St. Repr. 760.)

To sustain an action for fraud founded upon representations made by a purchaser, it must be made to appear that he believed, or had reason to believe at the time he made them, that they were false, or that without knowledge, he assumed or intended to convey the impression that he had actual knowledge of their truth when he had no such knowledge, and that the plaintiff relied upon them to his injury. (*Wakeman* v. *Dalley*, 51 N. Y. 27; *Meyer* v. *Amidon*, 45 id. 169; *Oberlander* v. *Spiess*, Id. 175.)

The setting aside of a sale of a chattel which has been delivered on the ground of fraudulent representation by the vendee, the fraud must be clearly proved; and while fraud may be established by circumstantial evidence, it can only be by proof of such circumstances as are irreconcilable with any other theory than that of the guilt of the person accused of the fraud. (*Baird* v. *The Mayor*, etc., *of the City of New York*, 96 N. Y. 567.)

Within this rule we think the jury were not authorized from the evidence in this case to find that the purchase of these goods by the Keith Company was procured by fraud. There is no direct evidence which we have been able to find which would uphold the finding of the jury, that Hyland at the time of ordering these goods, knew or had reason to believe that any representation or statement made by him as to the financial condition of the firm was untrue. As we have seen, the stock on hand and the amount of book accounts due the firm were far in excess of the liabilities of the firm, and those liabilities were a first charge upon the entire firm assets before any of the firm property could be applied upon the individual liabilities of the individual members of the firm, and there is nothing in the transaction, so far as the evidence discloses, from which the jury could properly infer that Hyland purchased these carriages with a fraudulent design of appropriating their value and not paying the plaintiff the price at which they were purchased; but if there was enough in this case to authorize the jury to find the representations made by Keith Company's book-keeper were exaggerations of the financial condition of Keith Company, the evidence discloses no facts tending to establish the

bookkeeper's authority to make any such declaration or to bind the firm by it.

The case expressly shows that the representations made by the bookkeeper to the mercantile agency were not communicated to the Keith Company or either member of that firm, and that the book-keeper had no express authority from the firm to make representations as to its financial standing which would bind the firm, and his representations to the mercantile agency would not amount to such fraudulent representations by the firm as would authorize the plaintiff to treat the sale by them of these carriages to the Keith Company and the purchase of the same by said company as fraudulent and void.

The question of fraud must, therefore, turn upon the statement made by Hyland at the time of making the order. That statement was that "the company had had an unusually good holiday business, was prosperous and was doing a nice business, and everything was looking promising, and its financial condition was all right."

Under the circumstances of this case and within the authority, we do not think that that statement can be construed as fraudulent so as to vitiate the sale, and it was, therefore, error to allow the jury to speculate upon that statement in the absence of any evidence showing that Hyland knew at the time of making the same that it was untrue.

We think it was also error to allow the statement of the mercantile agency, based upon the representations of the Keith Company's bookkeeper, to be received in evidence. There was no evidence of authority in the bookkeeper to make statements to the mercantile agency of the Keith Company's financial standing, nor was there any evidence that the Keith Company knew that their bookkeeper had made such statements at the time of ordering the goods, and the acceptance of the goods by the Keith Company in the absence of such knowledge was not a ratification of the statement of the bookkeeper. (Bigelow on Frauds, 363.)

In this case the plaintiff having asserted the authority of the bookkeeper to make this statement, assumed the burden of proving affirmatively the existence of such authority. This, we think, it failed to do, and for that reason the declarations of the bookkeeper were not competent to bind the principal, and their reception, under the defendant's objection, was error.

For these reasons, without discussing the other questions raised by the appellant, we think this judgment should be reversed.

PUTNAM, J., concurred.

Judgment reversed, new trial granted, costs to abide event.