WAKEFIELD RATTAN COMPANY, Respondent, *v.* SHEPARD TAPPEN, as Sheriff of Rensselaer County, Appellant.

*Power of an agent — cannot be shown by his declarations — a clerk and bookkeeper in a retail store has no power to bind his principals by a statement of their financial condition.*

The extent of the power of an agent cannot be shown by proof of the declarations of the alleged agent.*

A clerk and bookkeeper in a retail store is presumed to have authority to sell goods and to do the ordinary business carried on therein, but, in the absence of evidence of authority so to do, he is not deemed to have the right to bind his principals by statements to a mercantile agency as to their financial condition.

(HERRICK, J., dissenting.)

APPEAL by the defendant, Shepard Tappen, as sheriff of Rensselaer county, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Rensselaer on the 6th day of March, 1893, upon the verdict of a jury rendered after a trial at the Rensselaer Circuit, and also from an order entered in said clerk's office on the 18th day of March, 1893, denying the defendant's motion for a new trial.

The plaintiff's alleged cause of action appears in the opinion of HERRICK, J.

*Henry L. Landon* and *James G. Fursman*, for the appellant.

*Frank S. Black*, for the respondent.

PUTNAM, J. :

Without considering any of the other questions raised in the case, I think a new trial should be granted for the reason last stated in the opinion of Justice MAYHAM.  (70 Hun, 403–414.)

The exception of the defendant to the reception of the testimony of the witness Seaver, plaintiff's agent, showing that in making the sale of the goods which were the subject of this action, he relied upon the report of the Edward Russell Company, founded on the statements of Frank Andros, made March 1 and September 13, 1890, was clearly well taken.  But the error of the court in over-

---

* See 79 Hun, 541.

ruling the objections of defendant to such report might have been obviated if the plaintiff had afterwards shown that Andros was authorized to represent the Keith Company in making the statements in question to the mercantile agency. I think, however, it failed to show any such authorization.

The evidence in the case relating to this authority of Andros was, substantially, as follows: It was shown by the witness Dabell that Andros was the bookkeeper of the Keith Company in 1890 and had been for several years. The witness Coffey testified that Andros had charge of the books and was in general charge of the store at the time he called. The last-named witness further testified that he understood that Andros was manager of the business. When asked from whom he understood it, he answered, "from himself."

It is well settled that the power of an agent cannot be shown by the declarations of the alleged agent. It is said in *Gould* v. *Town of Sterling* (23 N. Y. 456–463): "No representation of the agent as to the fact of his agency, or as to the extent of his power, is of any force to charge the principal. But, it being shown, by other evidence, that the agency existed, and that the act done was within the general scope of the power, the principal is bound by the representations of the agent as to any essential facts known to the agent but which the party dealing with him had no certain means of ascertaining."

The last-named witness also testified that he had no recollection of going to the store of the Keith Company at any other time then the 13th of September, 1890, to acquire any information. Andros, as a witness, in answer to the question by the court, testified that he was not the manager of the business; he was a bookkeeper. Hence, the testimony in the case only shows that Andros was a bookkeeper of the Keith Company and had been for several years, and when Coffey called at the Keith Company's store in September, 1890, was in charge. There is no evidence, whatever, that he had any authority from the Keith Company to make statements for the use of the mercantile agency.

I think no such authority is to be implied. Andros was a clerk and bookkeeper in a retail store, and should be presumed to be authorized to sell goods and to do the ordinary business there car-

ried on.  But I do not think he should be deemed, in the absence of evidence, to have had the right to bind his principals by statements to the mercantile agency.

Therefore, it was erroneous for the court to allow the statements of Andros to be read in evidence and to overrule the objections to the testimony of Seaver, plaintiff's agent, that in making the sale of the goods in question he relied on the mercantile agency's report founded on such statements.

The reception of this evidence probably influenced the jury.  It ·is true that some representations made by Hyland, a member of the Keith Company, as to the financial standing of. the firm at the time the Keith Company ordered the goods in question were shown. But these representations were so vague and indefinite that a jury would have been justified in refusing to render a verdict founded thereon.  It is probable that the jury, in reaching the conclusion that the Keith Company obtained the goods in question by fraud and deceit, were influenced by the testimony given as to the statements of Andros to the agent of the mercantile agency.

It was for the plaintiff to show the alleged false representations of the Keith Company.  It attempted to do this by testimony of the statements of one of the members of the Keith Company, which was competent; also by evidence of representations of Andros to the agent of the commercial agency, which I have endeavored to show were incompetent.  The defendant was not compelled to offer evidence to show the lack of authority on the part of Andros.  He could properly rest on the failure of plaintiff to show affirmatively such authority.

I have examined the authorities cited by the learned counsel for the respondent, and am unable to see that they conflict with the views above stated.  They are generally cases holding that one employed in the office or place of business of a corporation or individual, apparently having charge or some charge of the business there carried on, and assuming to transact business as agent for such corporation or individual, will be presumed to be authorized to act as such in matters relating to the ordinary business of the parties for whom he assumed to act.  As if, for instance, Andros had assumed to sell goods in the store of the Keith Company with a warranty or on credit.  Any act of Andros in the store relating to

the ordinary business of the firm would doubtless have bound the Keith Company. But the act of making statements of the financial standing of his employers to the mercantile agency was not ordinarily the duty of a clerk or bookkeeper, or within his ordinary powers, and no special authority was shown on his part to make such representations. The case of *Corning* v. *Walker* (14 Wkly. Dig. 314), cited by counsel for respondent, was where, after a person was shown to be a general manager of a party, it was held proper to allow evidence of his declarations. Here, as we have seen, not only is there no proof that Andros was general manager, but, on the contrary, his uncontradicted evidence shows that he was not.

There has been no discussion before us on the question of plaintiff's right to maintain this action of replevin under subdivision 3 of section 1690, Code of Civil Procedure. (See *Wise et al.* v. *Grant*, 140 N. Y. 593.)

For the reason above stated I am in favor of a reversal of the judgment.

MAYHAM, P. J., concurred.

HERRICK, J. (dissenting):

Owing to some misapprehension of the facts in this case upon the former argument, arising in part from imperfections in the record, a rehearing was ordered, and the case is now before us for reconsideration, such reargument having been had.

The plaintiff brings its action in replevin to recover possession of fifty-four baby carriages and twenty-two brakes, of the value of $638.35, which it is alleged the defendant wrongfully took possession of, and wrongfully and unlawfully detained.. The defendant claims to hold such property by virtue of certain executions placed in his hands upon judgments against the Isaac Keith Company, in whose possession such baby carriages and brakes were at the time of the issuing of such executions.

The plaintiff's claim is, that it was induced to sell such property to the Isaac Keith Company by false and fraudulent representations, and in consequence thereof it alleges that the legal title to the same has never been parted with by them.

The Isaac Keith Company is a co-partnership consisting of William H. Hyland and Phœbe Link.

The business appears to have been established by one Isaac Keith, and upon his death to have been continued for a period of time by his heirs, from whom an interest was purchased by the said William H. Hyland.

The plaintiff is a corporation. About the last of January or the first of February, 1891, a sale of the property in question was made through one of its agents, who called at the place of business of the defendant, and in the course of the negotiations was informed by Hyland that " they had an unusually good holiday business ; that the business was prosperous, and that the concern was doing a nice business and everything was looking promising. Q. How about its financial condition ? A. And the financial condition was all right."

At that time the order was given for the carriages and brakes in question ; the order, together with this statement of Hyland's, was communicated by said agent of the plaintiff to plaintiff's credit man. The credit man then applied to a commercial agency, and obtained a report of the financial condition of the said Isaac Keith Company, which was as follows :

EXHIBIT " A."

" Statement made March 1st, 1890. Their inventory taken February 1st, as follows :

| | | |
|---|---:|---:|
| " Merchandise — furniture | $22,887 | 45 |
| " Merchandise — carpets | 8,933 | 47 |
| " Cash | 569 | 21 |
| " Bills receivable | 1,459 | 40 |
| " Book accounts | 22,201 | 18 |
| " Total assets | $56,050 | 71 |
| " Bills payable | $6,700 00 | |
| " Book accounts | 9,823 67 | |
| " Total liabilities | 16,523 | 67 |
| " Net assets | $39,527 | 04 |

" The book accounts in the assets were $32,301.18, but in the inventory they deducted $10,000 for poor accounts.

" Sept. 13th, 1890 — Mr. Frank Andros, manager, tells us to-day that there has been no change in their affairs since their statement last March."

This report was accompanied with the statement that the condition was reported to be substantially unchanged.

This statement was received on or about the 7th or 8th of February, 1891, and the baby carriages and brakes were shipped on the 14th of February, 1891.

In March following judgments were entered against the Isaac Keith Company, and executions thereon issued to the sheriff, and the property of that firm levied upon and subsequently sold Upon the sale the property brought about $13,000 In addition to the executions there was also placed in the sheriff's hands, at about the same time, for foreclosure, two chattel mortgages, one for $4,000, and one for $1,500. What these mortgages were given for does not appear in the case.

The plaintiff commenced this action by the service of a summons the 26th day of March, 1891, claiming that the representations made to it, whereby it was induced to part with the property in question, were false and fraudulent, and that the said Isaac Keith Company, at the time thereof, was insolvent and unable. to pay its debts.

William H. Hyland went into the firm of the Isaac Keith Company about the 1st of March, 1890 ; what his interest was does not appear ; it will, therefore, be assumed that he and Phœbe Link were equal partners ; he paid no money at the time of entering into the co-partnership, but the consideration of his purchase of such interest was $12,000, which he states was to be paid by his paying the debts of the firm. He was at that time indebted to Harriet L. Keith, from whom he purchased his interest in the concern, in the sum of $5,000 payable in from one to five years.

On the 1st of March, 1890, the statement to the commercial agency, hereinbefore set forth, was made by the bookkeeper of the new firm, who had likewise been the bookkeeper of Isaac Keith, in the same business, for a number of years.

In September he stated to the commercial agency that there had been no change in their affairs since the statement of March.

On the 21st of October, 1890, the Isaac Keith Company executed and delivered a note on demand for the sum af $6,000, payable to the order of William H. Hyland, which note was subsequently given to the Central National Bank of Troy.

On the eighteenth day of October, William H. Hyland and Phœbe Link, as co-partners, under the name of the Isaac Keith Company, executed and delivered their promissory note, whereby they promised to pay Elizabeth Hyland, on demand, $3,000.

On the 9th day of December, 1890, Phœbe Link made her promissory note payable to the order of William H. Hyland for $1,500, payable three months after date. This note appears to have been subsequently indorsed by Hyland, and transferred to Richard A. Cunningham and William H. Taylor. The case does not disclose whether this note was given for the benefit of the co-partnership or not; the judgment subsequently entered upon it was against both parties.

On the 3d of February, 1890, William H. Hyland gave to Harriet L. Keith five separate promissory notes of $1,000 each, payable respectively in one, two, three, four and five years from the date thereof.

On the 22d day of January, 1891, the Central National Bank of Troy commenced an action against the said William H. Hyland and Phœbe Link upon the note of $6,000 I have referred to; no appearance was made by them in said suit, but judgment was not entered thereon until the 20th of March, 1891.

Confessions of judgment upon the other notes I have described were given by the said Hyland and Link on the 22d and 23d of March, 1891.

In the confession of judgment given upon the note for $3,000 to Elizabeth Hyland, it is stated that such note was given for money actually loaned by the said Elizabeth Hyland to the said William H. Hyland and Phœbe Link.

At the time of the commencement of plaintiff's action, judgments had been entered against the said William H. Hyland and Phœbe Link, by default or by confession, as follows: Central National Bank, March 20, 1891, by default for the sum of $6,170.93; Henry Heywood and others, March 23, 1891, upon confession for the sum of $610.96; Elizabeth Hyland, March 23, 1891, upon confession for the sum of $3,078.01; Richard A. Cunningham and William H. Taylor, March 24, 1891, upon confession for the sum of $1,542.01.

And in addition chattel mortgages had been placed in the sheriff's

hands for foreclosure, amounting to $4,500, making an aggregate in all of $15,901.21; and in addition there had been entered by confession a judgment against William H. Hyland individually upon the five notes of $1,000 each, given by him, as above stated, to Harriet L. Keith. And at the time the goods in question were replevined the sheriff was in possession of them under executions issued in favor of Elizabeth Hyland and Harriet L. Keith; executions had also been issued upon the Central National Bank judgment, but whether upon the other judgments does not appear.

The first thing that occurs to one in reviewing these facts is, that while Hyland, for his interest in the concern purchased of only one of those at that time interested in such firm, and presumably an equal partner with Phœbe Link, was to pay debts to the amount of $12,000, and the entire indebtedness of the firm, if that was so, must have been greatly in excess of that amount, yet the statement rendered to the mercantile agency, almost immediately upon his becoming a partner, shows the liabilities of the concern to have been only $16,523.67. The same statement shows gross assets of $56,050.71, and net assets of $39,527.04 after deducting $10,000 for poor accounts.

It strikes one as extraordinary, if these statements as to their assets are true, that Hyland should have been able to purchase an equal interest for the sum of $12,000, payable in the manner claimed by him.

In October the new firm incurs an indebtedness of $9,000, having during the previous month made the statement to the commercial agency that they were in the same condition that they were at the time of the March statement.

This indebtedness they seem to have been unable to meet, for on the 22d of Janaury, 1891, an action was commenced against them to recover $6,000. In addition to the firm's indebtedness it will be observed that Hyland was individually indebted to the amount of $5,000 ; and while such debts are not payable out of co-partnership assets, until the co-partnership debts are paid, still the fact that members of a co-partnership are individually indebted does not improve the credit of the concern.

This then was the condition of affairs at the time of the sale of the property in question, and at the time the plaintiff was assured

that their "financial condition was all right," when, in about a month after such sale and assurance of solvency, their store was closed, judgments entered against them, one by default, others by confession, and chattel mortgages upon their property placed in the hands of the sheriff for foreclosure.

Was their financial condition all right at that time when a very few months before that time they had been compelled to borrow money, presumably to carry on their business, and which was due upon demand, and when at the very time of the statement a suit was being prosecuted against them to recover the sum of $5,000, in which suit they made no appearance or defense?

Upon the part of the defendant, the bookkeeper of the Isaac Keith Company and William H. Hyland were called as witnesses; they gave no explanation whatever of these facts I have referred to. Hyland, after stating how long he had been in the business, whom he purchased his interest from, and what occupation he had been engaged in prior to going into the co-partnership, testified that at the time of the purchase of the baby carriages the value of the stock of goods of the co-partnership was $20,000, and that the book accounts amounted to about $21,000. The bookkeeper testified that the statement made by him to the mercantile agency was correct, and that the cost value of the stock on hand February first was about $20,000, and the amount of the book accounts about $21,000. No other evidence on the merits was given on the part of the defense.

The total indebtedness of the Isaac Keith Company does not appear.

It seems to me that these facts present a proper question for a jury to pass upon, to determine whether the sale was in fact induced by fraudulent representations.

The general principles of law by which such a transaction is to be gauged were correctly set forth by the court when the case was heretofore before us. (70 Hun, 405.) And under the principles there stated it seems to me the facts in this case require its presentation to a jury, and, if properly presented, there is no reason why we should disturb the verdict, unless some error was committed in the reception or rejection of evidence.

Upon the whole the trial court seems to have made a fair submission of the facts, and to have committed no substantial error of law

in its charge to the jury; most of the objections to the charge argued before us were to portions of it to which no exceptions were taken; the errors pointed out, conceding them to be errors, are not of sufficient importance to call for the reversal of the judgment because of them.

The only question of importance arising upon the reception or rejection of evidence is upon the reception in evidence of the report of the mercantile agency.

The statement was made to the agency by the bookkeeper of the Isaac Keith Company; he had been connected with the business for a number of years, when it was conducted by Isaac Keith; when the reporter of the agency called, neither member of the firm was present, and he seemed to have charge of the store; he also furnished the other statements to the agency.

This was the condition of the testimony at the close of the plaintiff's case, and conceding it to be slight evidence of authority to make the statement, still, without that statement being in evidence, there was enough in the case to warrant the court in denying a motion for a nonsuit. So, at that stage of the case, the defendant was not injured by its reception in evidence.

The defendant called both the bookkeeper and Hyland as witnesses, and there is no pretense on their part of any lack of authority to make the statement, and no claim of ignorance on the part of the Isaac Keith Company that any such statement had been made. If there was no authority to make the statement, or if there was a lack of knowledge that it had been made, there was abundant opportunity to show that fact; the witnesses were on the stand by whom it could have been proved, and failure to do so strengthened the evidence of authority already received, and seems to me made it proper evidence to submit to the jury. Failure to controvert a statement adverse to a party when there is an opportunity to controvert, raises a presumption of its truth. (Taylor's Ev. § 809; *Stover* v. *People*, 56 N. Y. 315.)

The judgment should be affirmed, with costs.

Judgment reversed, a new trial granted, costs to abide the event.