MARINE BANK OF BUFFALO, Respondent, *v.* THE BUTLER COLLIERY COMPANY, Appellant.

*N. Y. Supreme Court, Fifth Department, General Term, April 12, 1889.*

1. *Promissory notes. Presumption of dishonor.*—The notarial certificate will be presumed on appeal to have been regarded on the trial as having been in evidence, where there was no request to find that the notes were not duly protested, nor any exception to the finding of the referee of due protest.

2. *Corporations. Agency.*—A corporation cannot set up its by-laws, never published to the world, and habitually disregarded by itself, as countervailing the authority publicly conferred upon its president, by permitting him to be, and to hold himself out as, the general manager and director of its business.

3. *Same.*—Where a principal has authorized its agent to discount at a bank all notes taken for the sale of coal, the bank has a right to rely on the representations of the agent, not of the existence of his authority to procure discounts, but that the notes offered by him for discount were within the scope of that authority, and the principal is estopped from denying that those representations were true.

4. *Same.*—The bank is entitled to credit for all moneys drawn by the agent in the ordinary course of the business, and apparently within the scope of his authority as agent, though misappropriated by him.

5. *Same.*—No revocation of the authority of an agent, or change in the personnel of the principal, can affect the dealings with a third person, unless such change or revocation is brought home to the latter.

Appeal from a judgment entered on a referee's report.

*J. W. Dinninny*, for appellant.

*Sherman Rogers*, for respondent.

DWIGHT, J.—The action was to recover the amount of thirteen promissory notes, discounted for the account, as is alleged, of the defendant, on the endorsement of the latter

by an agent duly authorized thereto; also, the amount of a small overdraft of the same account made by the agent and paid by the defendant.

The plaintiff is a banking corporation under the laws of this state, and the defendant a mining corporation, organized under the laws of Pennsylvania, having its principal financial and business office at Elmira, in this state. Eli S. Hubbell was, on the 12th day of July, 1881, the agent of the defendant at Buffalo.

The agent and the business were introduced to the plaintiff on the day last named by a letter, of which the following is a copy:

" THE BUTLER COLLIERY COMPANY,
"ELMIRA, N. Y., *July* 12, 1881.
" *S. M. Clement, Esq., President:*

" DEAR SIR—This is to inform you that E. S. Hubbell is the authorized agent of the Butler Colliery Company for the sale of its coal at Buffalo, N. Y. Any paper he may take for coal sold for said company, he is authorized to indorse as the agent of said company and get it discounted at your (the Marine) bank, and that any and all such paper so indorsed which you may discount for him, the said company will see paid.

" Yours truly,
" F. C. DINNINNY,
" *President.*"

The writer of the letter was the president of the defendant, elected in 1877, and continued in that office without re-election down to the time of the commencement of this action, there having been no election of officers since 1877, and no meeting of directors since 1879. He was during all that time the actual manager of the business of the defendant, and, with the nominal treasurer of the corporation, owned all its stock except a few shares, held by persons employed in the office of the defendant, sufficient to qualify

them for directors, and thus to make and maintain a corporate organization. As president, he drew the drafts and indorsed the checks and other commercial paper of the defendant, and directed all the financial affairs of the corporation, with the knowledge of the other directors and stockholders.

The business of the defendant at Buffalo was the sale of coal mined at Pennsylvania, for cash, and on credit, at wholesale and retail; its sales at that place amounting annually, to from 18,000 to 20,000 tons, and in value to about $100,000 a year. Hubbell continued in charge of the coal yard and business at Buffalo, doing business in the name of the defendant, and with its knowledge, until about July 18, 1886, when for the first time, the plaintiff received notice of the revocation of his authority as agent.

There is evidence on the part of the defendant tending to show that, some time in February, 1883, the defendant by its president, directed Hubbell to have no more notes discounted on its endorsement, but to send all notes taken for coal to the Elmira office ; also, that about May of that year the sale of coal at Buffalo was in fact the business of Dinninny and Carson, the president and treasurer of the defendant—though still carried on in the name of the corporation, but no notice of such revocation of the authority of the agent nor change in the proprietorship of the business at Buffalo was ever given to the plaintiff until after the last of the transactions which are the subject of this action. The business was, during all that time, carried on in the name of the defendant and by Hubbell as agent, in the same manner and with the same apparent authority as before. The thirteen notes in suit were all presented by him for discount, and discounted by the plaintiff in the usual course of business, in April, May and June, of 1886.

Some of the notes in suit, like many others which had been discounted during the five years of the continuance of

the business, were given in the renewal of previous notes received in the sale of coal, and the consideration of all of them was coal sold at the yard in Buffalo, either at the dates of the notes or previously thereto.   The notes were all duly protested for non-payment, and notice of dishonor was duly given to the defendant as shown by the notarial certificates which are contained in the case.   A question was raised for the first time on the argument here whether those certificates were formally offered in evidence, but they are found in the case accompanying the notes to which they severally relate; there was no request to find that the notes in suit were not duly protested for non-payment, nor any exception to the finding of the referee " that when said notes respectively became due they were duly presented for payment according to their terms, and payment was demanded and refused, and thereupon due notice was given to the defendant."   We must assume that the notarial certificates were regarded, on the trial, as having been put in evidence, and as establishing the fact of due notice of dishonor of the notes.

The remaining cause of action for an overdraft of the account in the plaintiff's bank, was established by undisputed evidence, which showed that the check for that amount, drawn by E. S. Hubbell, agent, to the order of the defendant, was paid, on the endorsement of " F. C. Dinninny, president, etc.," to the bank at Elmira, through which it was forwarded for collection,   *   *   *   there being at that time no funds to the credit of the account, against which it was drawn in the plaintiff's bank.

Upon these facts, found upon undisputed evidence, we cannot doubt the correctness of the conclusion of the referee which awards a recovery to the plaintiff.

The notes were evidently discounted by the plaintiff, relying upon the apparent authority of Hubbell, the agent, to endorse them for the defendant.   The letter of July, 1881,

gave the plaintiff notice of Hubbell's authority, as agent of the defendant, to sell its coal at Buffalo, to take notes for coal sold, to endorse such notes for the defendant, and to procure their discount at the plaintiff's bank. The authority of Dinninny to write the letter, and to bind the defendant thereby, is clearly established by the undisputed evidence of the manner in which the business of the corporation was conducted. During all the years covered by the transactions in question, the president of the corporation was permitted to be and to hold himself out to the world as being the general manager and director of its business. The act in question was within the scope of the authority thus practically accorded to him, and the defendant cannot set up its by-laws, never published to the world, and habitually disregarded by itself, as contervailing the authority thus publicly conferred; See Martin *v.* Niag. Falls Paper Mfg. Co., 44 Hun, 132, 138; 8 N. Y. State Rep. 265; Martin *v.* Webb, 110 U. S. 7, 15.

That the notes were within the terms of the letter has been found by the referee on undisputed evidence. They were given for coal sold by the agent, for the defendant. That some of them were taken in renewal of notes given when the coal was sold, does not change the character of the indebtedness, nor of the evidence of it; the consideration was still the same. Moreover the plaintiff had a right to rely on the representation of the agent, not of the existence of his authority to procure discounts, but that the notes offered by him for discount were within the scope of that authority, and the defendant is estopped to deny that those representations were true. Bank of Batavia *v.* N. Y. L. E. & W. R. R. Co, 106 N. Y. 195; 8 N. Y. State Rep. 209. In that case the court says: " It is a settled doctrine of the law of agency in this state, that when the principal has clothed his agent with the power to do an act in case of the existence of some extrinsic fact, necessarily and

peculiarly within the knowledge of the agent, and of which the act of executing the power is itself a representation, a third person dealing with such agent in entire good faith, pursuant to the apparent power, may rely upon the representation, and the principal is estopped from denying its truth to his prejudice." In this case the extrinsic fact that the notes were given for coal, upon which the authority of the agent depended, and which was solely within his knowledge, was represented not only by the presentation of the notes for discount, but by the repeated assurance of the agent that he never did, and never should present notes of any other character.

The fact that the endorsements were made in the name of E. S. Hubbell, agent of the Butler Colliery Co., and not in the name of the corporation, by E. S. Hubbell, agent, though not strictly conformed to the language of the authority, was within its spirit and intent, and was ratified by a long course of dealing on the part of the defendant, with full knowledge of the manner in which the business was done, and with full enjoyment of the fruits of the transactions.

The same principles apply to support the disallowance by the referee of the counterclaim of the defendant, for moneys received by the plaintiff from the defendant's agent, and afterwards drawn out, and, as is alleged, misappropriated by him. The authority of the agent to open and maintain the account with the plaintiff, and to draw against it for the purposes of his agency, being established by the letter of authority and the course of dealing between the parties, the plaintiff, in the absence of notice to the contrary or of facts to put it upon inquiry, had the right to assume that the acts of the agent, in this connection, were what they purported to be, viz.: in the execution of his power as agent.

The plaintiff was, therefore, entitled to credit for all moneys drawn by the agent in the ordinary course of the

business, and apparently within the scope of his authority as agent.

It is unnecessary to employ any reasoning to maintain the proposition that no revocation of the authority of the agent, or change in the personnel of the principal, could affect the dealings with the plaintiff unless a change or revocation was brought home to the latter.

In all those respects we must regard the findings of the referee as well supported by the evidence, and his conclusions of law as well grounded upon the facts so found.

There was an item of counterclaim, of $150.10, for coal sold to the plaintiff, established by evidence and not controverted by the plaintiff. It was apparently overlooked by the referee, and the plaintiff now concedes that the judgment should be modified by its allowance.

That modification being made, the judgment, as modified, should be affirmed, with costs.

All concur. Judgment modified by deducting therefrom the sum of $150.10, with interest thereon from the date of the report, and as so modified, affirmed, with costs.