A. Schuyler Bussing, Appellant, *v.* Lowell Film Productions, Inc., Respondent.

Third Department, November 18, 1931.

*Tobias A. Keppler*, for the appellant.

*Alfred D. Dennison*, for the respondent.

Van Kirk, P. J. An assignee of the Quigley Publishing Company brings this action to recover for advertising. The defendant, " Lowell Film Productions, Inc.," was organized to make and produce a moving picture. The advertising was of this picture and its object to sell territory within which to present the picture. Russell, one time president of defendant, executed a contract with defendant which authorized him as agent to sell territory on a commission basis. Russell executed the advertising contract with plaintiff. The question is whether or not Russell had authority to execute that advertising contract on behalf of defendant. In using the word " plaintiff " we refer to the Quigley Publishing Company and its assignees. Both parties moved for the direction of a verdict; the court thereupon directed a verdict for the defendant of no cause of action.

The question whether a certain act is within the scope of the servant's employment is ordinarily one for the jury to determine.

(*Conant* v. *American Rubber Tire Co.*, 48 App. Div. 327, 330; *Patterson* v. *Robinson*, 116 N. Y. 193; *Mott* v. *Consumers' Ice Co.*, 73 id. 543, 550.) The contract in question was signed " John L. Russell, Pres., Lowell Film Productions." The approved manner of executing a contract by an agent is to do so in the name of the principal by his agent. (*Sun Printing & Publishing Assn.* v. *Moore*, 183 U. S. 642.) In the recitals of the contract the first party is the " Lowell Film Productions." Though in the form in which the contract is signed, the words " Pres., Lowell Film Productions " merely identifies the man, yet, with the name of the party recited in the instrument and this being a contract not under seal (*Stanton* v. *Camp*, 4 Barb. 274), it may on its face appear to be the contract of the corporation, and if Russell's act is within the general powers of the corporation and he has personal charge of the business which the corporation was organized to transact, a *prima facie* case for the plaintiff is made. His act would be one which the directors could authorize or ratify. (*Sun Printing & Publishing Assn.* v. *Moore*, 183 U. S. 642.) If then we assume that the plaintiff made a *prima facie* case of Russell's authority to make this contract, still defendant had a right to combat this proof and, if substantial opposing proof is presented by defendant, a question of fact is raised which the court is called upon to decide. (*Patterson* v. *Robinson*, *supra*.)

The general powers of a president of a corporation " may be limited or restricted by the charter or by-laws of the corporation." (*Oakes* v. *C. W. Co.*, 143 N. Y. 430, 436.) Under the by-laws of defendant the powers of Russell as president were restricted; he had not authority to make this contract; such a contract could only be made by the signature of two officers of the company. Also Russell had been removed from his office six days before he executed this contract.

The directors had full authority to remove Russell as president " at pleasure." (Stock Corp. Law, § 60.) Officers of corporations are usually elected annually. If there is any presumption that one once an officer continues to be, that presumption disappears when direct substantial proof to the contrary is presented and the question would remain whether the presumed officer had authority to act for the corporation.

It is true that, if the corporation has openly allowed one to act for it and represent it in a particular line of action within the authorized business of the corporation, to the knowledge of a third party who contracts with him, the corporation may be bound. But there is no proof in this case that the plaintiff knew, at the time the contract was made, of any transaction by any one with

Russell as president of the corporation. The contract with Russell which gave him authority to sell territory was with Russell the individual, not the president. He did make such selling contracts, but the plaintiff had no knowledge thereof. Not until this action was begun, and at the trial, were any of these contracts brought to the attention of the plaintiff. A short time prior to the making of this selling contract Russell had advertised with plaintiff. For this advertising Russell paid with his personal check drawn upon a bank in which defendant had no account. The defendant never had knowledge of this check, or of this advertising, and evidently the canceled check was never returned to the defendant. Nothing in this transaction could have led the plaintiff to understand that Russell had authority to bind the defendant for printing. The expense of printing was not a debt of the defendant. Advertising is a part of selling; the cost thereof is one of the expenses of selling. Russell's contract to sell territory did not provide that defendant should pay his expenses; he was to have commissions only. Neither the defendant nor any of its officers knew of this advertising, and, had it come to their knowledge, it would not suggest that any debt was being incurred against the corporation, the officers knowing of the selling contract. It is said that there was an office in New York. If there was such, it was without the knowledge of the defendant or any of its officers and no charge for rentals has ever been made against, or paid by, the defendant. Russell had evidently taken the office for his personal use in performing his selling contract. No act of the defendant, and nothing done with its knowledge or the knowledge of any of its officers, had come to the attention of the plaintiff which could have suggested that Russell had authority to make the contract on which the action is brought, or to rent an office in New York for the defendant. " The principal is responsible only for that appearance of authority which is caused by himself, and not for that appearance of conformity to the authority which is caused only by the agent. (*Edwards* v. *Dooley*, 120 N. Y. 540, 551.) " (*Conant* v. *American Rubber Tire Co.*, *supra*, 329.) The fact of agency or the extent of his powers may not be established by the representations of the agent. *Wakefield Rattan Co.* v. *Tappen*, 80 Hun, 219.)

The time of making the contract casts suspicion on the good faith of the plaintiff. The publications were completed in May, 1924. Demands were made immediately upon Russell for payment and for a settlement of the account. In a few months Russell went to California and thereafter no further demands were made upon him and at no time was any demand made upon the defendant until December, 1929. There was never demand made

upon the defendant for leave to see its books and accounts. When Russell refused to show the books of the company he was not the president and had not the custody or control of them. Beecroft, who had made the demands upon Russell, knew that the offices of the defendant were in Gloversville; he made no demand there, nor did he make any such demand upon any officer of the company. In fact defendant had no suspicion of any claim against it of the character made here. No claim was made against it for more than four years; and some three and a half years passed after any demand was made on Russell.

The publishing company did not sue in its own name, but assigned the claim first to an employee and then to another party. The plaintiff did not produce Russell as a witness to establish what his authority was. Negotiations concerning an advertising contract had been going on, according to the testimony of Beecroft, for a considerable time, but the contract was made six days after Russell had been removed as president, and after Russell had been charged with failing to turn over to defendant moneys due it from him. One might easily infer that the parties then may have decided that a contract would be necessary in order that Russell might avoid his own indebtedness and that the publishers might collect from the corporation.

That Russell continued to sell territory after he was removed as president has no great significance. He had the sole contract to sell territory; this contract was not revoked and what he did thereafter he did solely under this contract.

There is no claim that the company ever in any manner ratified the contract sued upon and, under the evidence in the case and under the authorities above cited, the defendant was not estopped from disputing Russell's authority to execute the contract and bind the corporation.

The defendant having no knowledge of any dealings by this plaintiff with Russell could not give notice that Russell had been removed. But in any event, in the light of the evidence here presented, this failure to give notice could not affect the question of Russell's authority to contract for the defendant.

We conclude that the question of fact was presented and that the evidence justified the trial court in finding that Russell had not authority to execute this contract on behalf of the defendant.

The judgment should be affirmed.

All concur, except HILL, J., who dissents with an opinion, in which WHITMYER, J., concurs.

HILL, J. (dissenting). This action is brought by the assignee of the *Exhibitors' Herald*, a trade paper circulated among moving

pictures theatres in United States and Canada, to recover on a contract for advertising a moving picture film. Performance by the plaintiff is not questioned. The defendant asserts that it is not bound by the contract, because its president, John L. Russell, who executed the contract, had been removed at a meeting of the board of directors six days before the date of the contract, and, further, that it had contracted with Russell to pay him a commission of the receipts from the sale or lease of the rights to exhibit the film, and he personally should pay the expense of advertising. The plaintiff's position is that the contract was made in the name of the defendant by Russell who had been accredited as its agent by his election as president, and that third persons could assume that the agency continued until some notice of revocation was given, and that they were protected in acting upon the belief that he had the usual powers possessed by officials of a like character. At the close of all the evidence the attorneys for both parties moved for a directed verdict. The court granted the defendant's motion. The plaintiff appeals from the judgment and from the order denying a motion for a new trial. All questions of fact must be regarded as having been decided in defendant's favor.

Defendant was organized to produce a picture film, with the scene near Amsterdam, N. Y. The promoters and directors, other than Russell, were residents of that vicinity and without previous experience in the production or sale of films. The picture had been made, and at the date of the contract sued upon the only business of the defendant was to sell or lease rights to exhibit. This work was being done by Russell, who had had experience in producing and selling films.

A representative of the *Exhibitors' Herald* sought to obtain advertising contracts with the defendant early in 1924, called at its office in Gloversville and there found Russell in charge. Concededly he was then president. The representative also called at the New York city office of defendant and found Russell in charge. One page advertising defendant's film was published in the March, 1924, issue. The record is not clear as to the identity of the drawer of the check given in payment. The contract sued upon, dated April 14, 1924, was for thirty-two pages of advertising during ten weeks. Sales or leases had already been made in eighteen per cent of the territory in the United States and Canada. The following excerpts from the contract sufficiently disclose its terms: " To make this agreement clear, the following illustrations are used. If the remaining 82% of the territory was sold for cash, the publisher would immediately be entitled to $4,000 cash from the adver-

tiser. If a 41% territory was sold for cash, the publisher would immediately be entitled to $2,000 cash, etc. * * * The advertiser agrees to notify the publisher promptly upon the sale of territorial rights to ' Floodgates ' and to pay the proportionate amount due promptly or to issue notes (in case the sale is not for cash) promptly. * * * And it is agreed that in case the advertiser does not live up to the terms of the agreement as stated above on cash payments or the issuing of notes, or refuses to permit the publisher reasonable access to his books, the full amount of $4,000 will become due and payable immediately." Much or all of the remaining territory has been sold. Defendant has refused to permit access to its books to ascertain the facts in relation to the sales. Nothing has been paid on the contract. This action was commenced in February, 1929. If there is any force in defendant's argument that the delay of four or five years in bringing the action sustains its legal contention, it would be answered by the terms of the contract which made the compensation payable as and when rights were placed, and by the efforts made in the interim to collect from Russell, the only official with whom dealings were had.

Defendant's directors denied knowledge of the existence of an office in the city of New York. One had visited this office, but did not see the name of the defendant on the door. Several contracts leasing or selling rights to exhibit the film described the defendant as being " a New York corporation having its principal office at 729 Seventh Ave., New York, N. Y." These contracts, which provided for rentals of nearly $20,000, were produced upon the trial by one of defendant's directors and identified by its accountant. The lack of knowledge is assumed to be true, in light of the decision of the trial court, but it is immaterial. The location of an office is within a president's power. If it were not, such extreme inattention to the obvious would not relieve the defendant in its dealings with a third party.

Evidence of the claimed removal of Russell is given by the directors and defendant's minute book was received in evidence. It shows a meeting of four directors on April 8, 1924 whereat a resolution was adopted removing Russell as president but not as a director. The minutes indicate Russell's absence. It does not appear that he was in Gloversville where the meeting was held. The only evidence as to notice to him, either of the meeting or his claimed removal, is given by the secretary, who was one of the four directors: " I had sent out the notice of the meeting to Mr. Russell preliminary to the meeting." There is no other description of the notice or the way it was sent. There is no proof

that Russell or any person, other than the four directors, knew of the meeting of the board, or of the resolution. So confidentially was the matter held by the four directors that the witness Luff, who had been the accountant of the corporation from its organization, and at the time of the trial was an officer, understood that Russell was president on the date when the contract was signed. There was no change in Russell's duties after the meeting. Defendant accepted the benefits under at least six leasing contracts made and signed by Russell as its president after that date. There was silent acquiescence by these directors in the assumption by Russell of all the duties and powers of president, at least until the date of the last leasing contract, August 22, 1924.

We are not concerned in the amount of compensation which the defendant was to pay Russell, either as president or for distributing the picture film, or with any contract between them in reference thereto, except in so far as these facts limited the plaintiff's assignor in making a contract with defendant, through Russell. There is no proof that before this contract was made any publicity had been given to defendant's present assertion that Russell acted individually and not as its president in selling the product. Restrictions upon the powers of an officer or agent of a corporation do not exempt it from responsibility for his acts within the usual powers of such an officer or agent unless the restrictions are known to the party dealing with him, or have been given reasonable publicity. (*Marine Bank* v. *Butler Colliery Co.*, 5 N. Y. Supp. 291; affd., 125 N. Y. 695.) " A general agent may bind his principals by an act within the scope of his authority, although it may be contrary to his special instructions. (Story's Agency, § 733; *Walsh* v. *Hartford F. Ins. Co.*, 73 N. Y. 5; *Lightbody* v. *North Am. Ins. Co.*, 23 Wend. 18; *Angell* v. *Hartford F. Ins. Co.*, 59 N. Y. 171.) " (*Ruggles* v. *American Cent. Ins. Co. of St. Louis*, 114 N. Y. 415, 421.) " The powers of the agent of a corporation are such as he is allowed by the directors or managers of the corporation to exercise within the limits of the charter; and the silent acquiescence of the directors or managers may be as effectual to clothe the agent with power as an express letter of attorney." (*Olcott* v. *Tioga R. R. Co.*, 27 N. Y. 546, 558, 559.) Russell openly exercised all the powers of a president and general manager. The defendant accepted the benefits accruing to it from contracts made by him as president. " If officers of the corporation openly exercise a power which presupposes a delegated authority for the purpose, and other corporate acts show that the corporation must have contemplated the legal existence of such authority, the acts of such officers will be deemed rightful and the delegated authority will be presumed."

(Mr. Justice STORY in *Bank of the United States* v. *Dandridge*, 12 Wheat. 64, 70.)

The general law of agency governs the relations between a corporation and its officers and applies to the dealings between such officers and third parties. The directors had elected Russell president, thus accrediting him, as an agent of defendant, with all the powers usually exercised by presidents of like corporations. " There is no difference in principle or precedent between the powers, duties and liabilities of the agents of corporations and those of natural persons * * *." (*New York, P. & B. R. R. Co.* v. *Dixon*, 114 N. Y. 80, 85.) A principal is bound by the acts of his agent within the limits of his apparent authority until notice of the revocation of the agency and authority has been made reasonably public. (*McNeilly* v. *Continental Life Ins. Co.*, 66 N. Y. 23.) " It is a familiar principle of law that when one has constituted and accredited another his agent to carry on a business, the authority of the agent to bind his principal continues, even after an actual revocation, until notice of the revocation is given; and, as to persons who have been accustomed to deal with such agent, until notice of the revocation is brought home to them." (*Claflin* v. *Lenheim*, 66 N. Y. 301, 305.) This statement of the law by Judge RAPALLO applies to persons who have not dealt with the agent as such, and to those who have. As to the first class, the agent's authority is presumed " until notice of the revocation is given; " as to the second, " until notice of the revocation is brought home to them." Defendant gave no notice of Russell's removal and the resultant revocation; thus his authority as president could be assumed by third persons " who have no knowledge, grounds for knowledge or notice of the terminating event." (Restatement of the Law of Agency, American Law Institute, § 221.)

Defendant's only business in 1924 was to sell or lease the rights to exhibit its picture film in the United States and Canada. Advertising necessarily would be incident to an effort to sell an article over so wide a territory. The directors could authorize or ratify such contracts. " ' The president, having full personal charge of the business which the defendant was organized to transact, represented the corporation and *prima facie* he had power to do any act which the directors could authorize or ratify.' (*Hastings* v. *B. L. Ins. Co.*, 138 N. Y. 473, 479; *Oakes* v. *C. W. Co.*, 143 N. Y. 430, 436.) " (*Hardin* v. *Morgan Lithograph Co.*, 247 N. Y. 332, 338.)

There is no claim that the price or the terms of the advertising contract were unfair, and as notice of the revocation of Russell's

authority to make the contract was not shown, there was no question of fact for court or jury to determine.

The judgment should be reversed on the law, with costs, and the motion of plaintiff for a directed verdict should be granted, and he should have judgment for the sum of $4,067.69, with interest from January 31, 1925, with costs.

WHITMYER, J., concurs.

Judgment and order affirmed, with costs.