**Herman DE POVA, Appellant,**

v.

**CAMDEN FORGE COMPANY.**

No. 12332.

United States Court of Appeals Third Circuit.

Argued Feb. 6, 1958.

Decided April 2, 1958.

diversity jurisdiction only and matters of state law are, as a matter of course by now, settled by the appropriate state authorities. The defendant is a New Jersey corporation; the case was tried in the District of New Jersey; important operative facts occurred in New York and Pennsylvania. If there are conflict of laws questions involved, the New Jersey rule governs. Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

■ Since judgment was rendered against the plaintiff at the end of his case he has, on this appeal, the benefit of all the evidence in his favor and such inferences as may fairly be drawn therefrom. In stating the facts of the case we take his evidence as true, but only, of course, for the purpose of this appeal. To win finally the plaintiff will have to prove his case to the satisfaction of the trier of the fact whether court or jury.

The plaintiff, Herman A. De Pova, was employed by the defendant in 1954 for a year. The arrangement was concluded at a conference in New York between the plaintiff and Lowell Birrell, at that time a director and chairman of the Executive Committee of the defendant company. The plaintiff was to work at $20,000 per year, compensation retroactive to January 1, 1954, until Birrell "was satisfied I was worth more." Plaintiff went to work for the company beginning, as he was directed to do, by making a survey to see why the company was losing instead of making money. He made frequent reports to Birrell and, in August of 1954, summarized his findings before the Board of Directors at the request of Virgil Dardi, the Chairman. The plaintiff was requested at this meeting and was authorized by the Board to assume the duties of Dardi's assistant and general manager. Thereafter, under his supervision the company's position began to improve. The plaintiff was able to report in December of 1954 that the defendant company would be operating profitably at the end of the first quarter of 1955. This proved to be true.

Harry Norman Ball, Philadelphia, Pa. (Benjamin F. Friedman, Camden, N. J., on the brief), for appellant.

Maurice Schapira, Newark, N. J. (Schapira & Farkas, Newark, N. J., on the brief), for defendant-appellee.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

■ This is an appeal from a judgment for the defendant entered at the close of the plaintiff's case in a suit for the breach of an employment contract. The case is in federal court by virtue of

The plaintiff continued his work for the defendant in 1955. In March of that year he was offered an advantageous contract of employment with a concern called Erie Forge and Steel Company. He discussed this offer with Dardi who said he would propose to Birrell an increase in the plaintiff's salary for the remainder of 1955 to $35,000 per annum plus ten per cent of the net operating profits. Following this conversation, a meeting was held in Birrell's suite in a New York hotel. Birrell approved of the tentative arrangement, expressed pleasure with the plaintiff's conduct of the company affairs and added that the plaintiff should be given some options on stocks in companies that Birrell represented at the time. This last item has no significance in this lawsuit. It is mentioned only as part of the complete approval which plaintiff's work for the defendant met with on the part of the Acting President-Chairman of the Executive Committee of the Board of Directors and the Chairman of the Board of the company.

The plaintiff never got his increased compensation. The plaintiff never got his promised ten per cent of the net operating profits. Birrell resigned as Director and Chairman of the Executive Committee in August, 1955. Plaintiff was discharged by the defendant in the middle of October, 1955, and was not paid any salary for the final two and one-half months of that year. There is no evidence that the Board of Directors passed upon his discharge and no minute of the Board reflecting any action relating to the discharge. The plaintiff was told that the business had been sold to another company.

So much for the facts from the plaintiff's point of view. Now we turn to the legal questions.

## I. Was There Any Breach of a Contract of Employment?

The defendant's argument hints at a lack of tenure for the plaintiff alleging that he was asked to come in for a survey of defendant's operations, that the contract was indefinite as to length and,

therefore, he was dischargeable at will. But there is direct testimony from the plaintiff that he was originally hired for a year. He says so, in so many words. Furthermore, his compensation was fixed on an annual, not a per diem, basis. See 1 Williston, Contracts § 39, at 106–09 (rev. ed. 1936).

We now turn to the year 1955. The plaintiff continued to work for the company and was paid on the same basis as he had been before. Dardi, on December 20, 1954, wrote the plaintiff that he looked "forward to working with you in 1955." We think there is enough here to justify the trier of the fact to come to the conclusion that the plaintiff had an annual contract for the year 1955. See id. § 90, at 255. In that case he should be entitled to recover the difference between what he was promised and what he got.

This amount should include at least the unpaid portion of his original $20,000 salary. The defendant, however, says that this claim is not open to the plaintiff on the pleadings. We do not find this position to be maintainable and we think that a reading of the complaint will show that.

Does "what he was promised" include the increased compensation which Birrell agreed to give him at that meeting in New York?

Under the above analysis of this case, the only problem involved as to this question is whether consideration could be found for the additional pay to a man on an annual contract who has not reserved his freedom to quit. See id. §§ 130, 130B; 1 Corbin, Contracts § 175 (1950).

So eminent an authority as Corbin, however, would permit recovery to be had in such cases in the absence of countervailing circumstances. Id. § 186, at 608–11.

The other analysis of the case on the facts would give to the plaintiff for the year 1955 employment terminable at will up to the time when the Erie Forge offer came along. Then, in view of the plain-

tiff's giving up the possibility of a profitable employment with Erie Forge he is promised this additional and attractive compensation by Birrell. 1 Williston, op. cit. supra § 130B; 1 Corbin, op. cit. supra §§ 135, 175. On this version of the facts the employment at will would be succeeded by an employment for at least the balance of the calendar year 1955 at the new rate of compensation. This, according to plaintiff's testimony, seems to be what the parties had in mind.

We think further that a recovery on the basis of $35,000 per annum from March 1 to December 31, 1955 can be had regardless of the foundation for plaintiff's claim for the ten per cent of the 1955 operating net profits. 2 Fletcher, Private Corporations § 467 (rev. vol. 1954). The contract is clearly severable. If a man has a contract to buy a horse and a cow and the cow dies before the date of delivery, could anyone reasonably say that the promisee was still not entitled to the horse? We think the same thing is applicable here. See Restatement, Contracts § 463 (1932); cf. id. § 606 (illegality).

The authority to make this agreement with the plaintiff creates no serious problem so far as this item of recovery is concerned. It was made for the company through Birrell and Dardi whose powers were very wide as will be explained in greater detail when we reach the next point.

II. May the Plaintiff Recover on the Promise to Pay Him Ten Per Cent of the Net Operating Profits for the Year 1955?

This was the point that bothered the district judge especially when pressed with the New Jersey case of Savarese v. Pyrene Mfg. Co., 1952, 9 N.J. 595, 89 A.2d 237. It was a case where an employee alleged that he had been promised a job for life although there was neither board of directors nor stockholder prior authority or ratification. The court, in passing, mentioned this contract as an extraordinary one outside the regular custom and usage of business for officers to make on their own. We can dispose of that case quite easily by saying that it involved a contract which tied an employee to the corporation for life regardless of his efficiency or his ability to get results. There is good background in legal authority for closely scrutinizing such an arrangement. See, e. g., Annotation, 1940, 135 A.L.R. 646; 35 Am.Jur., Master & Servant § 24 (1941). See also the discussions of this point in Savarese v. Pyrene Mfg. Co., supra and Eilen v. Tappin's, Inc., App.Div.1951, 16 N.J. Super. 53, 83 A.2d 817.

What we are dealing with here, however, is an incentive type of contract which we believe stands on quite a different footing. This claim involves not a burden for the corporation to carry but a sharing of the fruits of profitable corporate activity.

It is noteworthy that the statutes of New Jersey recognize a public policy in favor of such incentive agreements. They also state a method by which those agreements may be provided for in the corporate structure. 14 N.J.S.A. § 9–1 to –5 (1937). It is arguable, although we do not believe soundly, that since the statute prescribes formalities for this type of contract, the statutory procedures must be followed in order to have it. We think such an argument pushes the effect of a permissive statute much too far. It does not follow that because this kind of a contract can be made by following one course that it cannot be made by following some other course. And there is good authority recognizing the legality of this type of employee arrangement aside from any statutory authority upon it. See, e. g., 5 Fletcher, Private Corporation § 2143 (rev. vol. 1952); Bennett v. Millville Improvement Co., E. & A. 1902, 67 N.J.L. 320, 51 A. 706.

To ascertain the legal effect of what was done here, we must examine the corporate structure of the Camden Forge Company.

There is a directors' resolution of December 11, 1953, in evidence. It sets up an Executive Committee of three mem-

bers. We do not think that this Executive Committee has significance in this case. The conference which the plaintiff tells about which was held in New York with Dardi and Birrell representing Camden Forge in negotiations with the plaintiff was between the plaintiff and two members of the Executive Committee. But there was no called meeting of the Committee and while two members might have done business effectively through a meeting duly had, there is no basis for claiming Executive Committee action by this conference held in the bedroom of a New York hotel.

But at this same meeting of December 11, 1953, it was also resolved that Lowell Birrell be made Chairman of the Executive Committee and it was further

"Resolved that in view of the fact that the office of President is vacant, the Chairman of the Executive Committee shall assume and exercise all the powers of the President as they are specified in Sec. 8 of the by-laws of the corporation * * *"

Reference to Section 8 in the by-laws of the corporation disposes in one sentence of Birrell's then power to hire the plaintiff. The President is given "general supervision of the business affairs and property of the corporation * *"

Now we turn to Article IV, Section 3 of the by-laws. The relevant language starts in the middle of a sentence:

"* * * the Board of Directors or the President may from time to time appoint such agents and employees of the Corporation as may be deemed proper. Such officers, agents and employees shall hold office for such period, have such authority,

1. It should be noticed in passing that the resolution of December 11th gave Birrell as Chairman of the Executive Committee "all the powers of the President as they are specified in Section 8" and what is just quoted from is Section 3 of the same article. We do not believe, however, in view of the quite obvious purpose to throw all possible corporate powers into

and perform such duties as in these by-laws provided or as the Board of Directors or the President may from time to time prescribe * * *" 1

■■ Whatever might be the necessity of a wider base in corporate authority for an officer to negotiate a profit-sharing contract, it seems to us to be clear from the structure and operation of this corporation that the intention was to concentrate a very great amount of authority in the Chairman of the Executive Committee and, interestingly, not in the Chairman of the Board. That being so, we think that Birrell did have from the corporation itself authority to make this incentive contract with the plaintiff. There is testimony which, if accepted, proves that he did so on behalf of the corporation. That is enough to allow the plaintiff to have his case submitted to the trier of the facts.

We, therefore, do not need to face in this case how far corporate officers may go in making incentive contracts without authorization by the directors. For better or for worse, the by-laws of this corporation representing, of course, corporate action by those who are responsible for its origin, gave the President equal authority with the Board of Directors as to employment. In other words, the President is authorized to do what the Directors can do and, by resolution, the Chairman of the Executive Committee is authorized to do what the President can do. This may or may not be a wise corporate arrangement but it is the arrangement that was made.

The judgment of the district court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.

Birrell as Chairman of the Executive Committee, that the language of the resolution is one of limitation. We think decidedly it is one of grant. Just why there was such effort to concentrate corporate powers in Birrell's hands at this point is not shown in the record and is none of our business in this case.