Dan LIND, Plaintiff,

v.

**SCHENLEY INDUSTRIES, INC.,**
Defendant.

Civ. A. No. 439–57.

United States District Court
D. New Jersey.

Nov. 7, 1958.

Irving J. Soloway, by Bernard I. Kramer and Ronald C. Targan, Newark, N. J., for plaintiff.

Milton, McNulty & Augelli, by John Milton, Jr., and John J. Hanlon, Jr., Jersey City, N. J., and Milton B. Seasonwein, New York City, for defendant.

WORTENDYKE, District Judge.

Plaintiff Lind had a verdict molded by the Court upon special findings made by the jury, pursuant to Federal Rule of Civil Procedure 49, 28 U.S.C. Motion for direction of verdict for defendant was denied. Motion is now made for judgment notwithstanding the verdict or, in the alternative, for a new trial. F.R.C. P. 50. Both motions must be considered. Montgomery Ward & Co. v. Duncan, 1940, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147. The amount of the verdict as molded includes damages upon two separate causes of action. Based on the jury's findings as to the first count, Lind, a former employee of the defendant corporation, was awarded $36,953.10 as an "override" commission of 1% on aggregate of gross sales of defendant's merchandise by salesmen allocated to plaintiff's supervision in the New York metropolitan territory, from April 19, 1951 to February 15, 1952, with interest. The jury also awarded Lind $353, without interest, as reimbursement for expenses of moving his household goods from New Jersey to New York at the termination of his status as New Jersey State Manager on January 31, 1957.

### Motion for Judgment N. O. V.

Upon this motion defendant contends that there is no evidence in the case which supports a conclusion that defendant agreed to pay plaintiff the stated commission upon the basis and during the period claimed. More particularly, defendant argues that as a matter of law the alleged integrated contract sued upon was not binding upon defendant because of lack of apparent authority in Kaufman and Herrfeldt to make or ratify it, and that the agreement, if it was made, was too indefinite and lacking in essential terms to be enforceable. Defendant also urges that waiver of the incentive features of the agreement relied upon, and a release of all claims of plaintiff thereunder are conclusively established by the evidence.

Briefly, Lind's proofs were as follows: He commenced employment with defendant as a salesman in the year 1941. From 1942 to 1950, he worked on a commission basis. On August 31, 1950 he became an assistant sales manager for the New York metropolitan area on a salary basis of $125 per week, raised to $150 on October 1, 1950, plus certain allowances. On April 19, 1951 Lind was appointed District Manager for the metropolitan area and was assigned approximately one-third of all of the defendant's salesmen in the area. This arrangement had its inception with the issue by Metropolitan Sales Manager Kaufman to each of his three assistants of an interoffice memorandum. This memo advised of the new title and briefly set forth the duties and responsibilities of the new position. The pertinent portion of the memo relied on by Lind was as follows:

> "An incentive plan is being worked out so that you will not only be responsible for increased sales in your district, but will benefit substantially in a monetary way.
> "Very truly yours,
> "S/      H. B. Kaufman
> "Metropolitan Sales Manager."

The other two District Managers under Kaufman received similar memoranda. Lind accepted the title and responsibilities of District Manager, but continued to receive only his salary remuneration of $150 per week until it was increased to $175 in January, 1952. On February 1, 1952 he was transferred from this position to become State Manager of defendant's business in New Jersey.

Lind admits that no contract arose between him and the defendant upon the language of the interoffice memorandum of April 19. He does claim, however, that shortly thereafter, in a discussion with Kaufman about the incentive plan adverted to in the memorandum, the latter informed him that "They are working something out for you." Kaufman reiterated this some two weeks later. Finally, Lind testified, in June 1951 Kaufman told him that he was to receive a 1% "override" commission on the gross sales of all the salesmen working under him. Kaufman later reassured Lind, upon his further inquiry, that he should not worry but would receive his "override." Lind's testimony was corroborated as to at least one of these meetings with Kaufman. In June 1951 a secretary in Kaufman's office heard Kaufman tell Lind that he would receive the "override." Until Lind became New Jersey State Manager he claims to have made several inquiries of Kaufman (denied by Kaufman) respecting the commission, but was unable to secure any more definite response than the suggestion that he refrain from worrying and the assurance that he would receive the commission. Lind argues that Kaufman was held out by the defendant corporation as apparently clothed with authority to bind the corporation to the payment of the "override" commission. He bases this on the fact that Kaufman advised him as to his weekly salary and all salary increases after he became Kaufman's assistant, and of his appointment as District Manager. Lind further testified that in 1950 one Herrfeldt, a vice-president of the defendant, had asked Lind to become Kaufman's assistant. Lind agreed, and Herrfeldt told him that Kaufman would fix his salary in that capacity. Herrfeldt was, at the time, in charge of all sales for the corporation, and plaintiff says that in such capacity Herrfeldt was authorized to hire and fire and to fix salaries of all personnel under his jurisdiction. After this conversation with Herrfeldt, Kaufman did in fact notify Lind of his salary status and of the October 1, 1950 increase. Lind admits that Kaufman did not inform him *who* had determined that he should receive the "override" commission. While working as District Manager, Lind made no further inquiry of Herrfeldt as to the commission. However, after his transfer from Kaufman's area, in the Fall of 1952 he was advised by Herrfeldt, in response to his further inquiry, not to worry, and was assured that he would ultimately receive the commission.

With regard to Kaufman's meaning when he stated "They are working it (the commission) out", Lind conceded he understood "they" to refer to Kaufman's superiors, including the company's president, Arthur Schulte, and his brother, John, a vice-president. Arthur Schulte's successor as president of the company on February 1, 1955, Stanley Brown, was never asked by Lind for payment of any commission. However, he did advise Lind, according to Lind's testimony, in the course of discussions of a possible sale of the New Jersey distribution business of the corporation to Lind, that if such sale were effected no charge would be made for goodwill because of the large amount of commissions owed to him. Brown denied this.

Defendant's evidence was as follows: It is uncontroverted that when Lind was assigned the title of District Manager by the memorandum of April 19, he did not receive any salary increase. No reference was made to any commission rights in any of the succeeding payroll increase authorizations. There is no evidence to contradict the testimony of Arthur Schulte that all payroll increases had to be approved by him before being made. Arthur Schulte, president of the defendant corporation from 1950 to 1954, testified that Herrfeldt had no authority to employ personnel or fix salaries or compensation of any kind independently of the approval or rejection by Schulte of such action, and that Kaufman was likewise so limited.

Plaintiff lays great stress upon the language of the memo of April 19 to the effect that an incentive plan was in process of being worked out from which

the plaintiff would benefit substantially in a monetary way. However, on January 28, 1952, Lind's annual salary was increased $1,300. It was noted on this payroll authorization, approved by Schulte, that this increase was for merit. For aught that may appear in the evidence to the contrary, plaintiff accepted this increase without comment respecting his failure to receive the claimed 1% commission. The acceptance of this salary increase, of course, was just six months after Lind, by his own testimony, had been told by Kaufman that he was to receive the commission.

The defendant also had certain fringe benefits in effect during Lind's employment as District Manager. An "Extended Plan for Incentive Compensation" adopted by the stockholders in April 1949 provided for certain incentive compensation based on the consolidated net profit of the company for the preceding calendar years. Also a pension trust had been in effect since April 1947. In addition to these so-called fringe benefits, defendant's New York Metropolitan Sales Manager encouraged sales competition among his subordinates for which he would recommend that cash prizes be awarded.

Kaufman testified that he issued the interoffice memorandum of April 19 to each of his three assistants. Although he denied having any conversations with Lind relative to his compensation following April 19, 1951, Kaufman conceded that he planned to recommend to Eastern Sales Manager Reiner, for submission to Herrfeldt, that Kaufman's three assistants be included in "our incentive pension plan—bonus plan." Kaufman's recommendations were approved, and these were accordingly included "in the Company incentive plan." He explained that the reference in the memo of April 19th to an incentive plan and to the substantial monetary benefit was the incentive bonus plan which he had in mind, and that "if an assistant did an especially good job, I (Kaufman) would recommend, through Mr. Reiner and Mr. Herrfeldt, that he would get an extra bonus or a larger bonus than maybe the other two men."

The integrated contract relied on by Lind herein was made and was to be performed in the State of New York. As this Court has jurisdiction by reason of diversity of citizenship of the parties, this Court must look to the conflicts law of New Jersey, Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, which dictates that the contract is governed by the law of New York, Specialties Development Corp. v. C–O–Two Fire Equipment Co., 3 Cir., 1953, 207 F.2d 753. Judicial notice of the law of New York is taken by this Court, Gallup v. Caldwell, 3 Cir., 1941, 120 F.2d 90, although it has not been shown to the Court that the law of New York differs from that of New Jersey or any other State.

The plaintiff relies exclusively upon the theory that the defendant corporation had clothed Kaufman with apparent authority to make the contract with Lind. He concedes that Kaufman had neither actual authority nor implied authority to bind the defendant to this contract. Therefore, the recent decision of this Circuit, De Pova v. Camden Forge Co., 3 Cir., 1958, 254 F.2d 248, is not a precedent here since the Court found in that case that the agent had *actual* authority to bind the corporate defendant.

Apparent authority has been concisely defined as "authority which the principal holds the agent out as possessing or which he permits the agent to represent that he possesses and which the principal is estopped to deny." Wen Kroy Realty Co. v. Public National Bank & Trust Co., 1932, 260 N.Y. 84, 183 N.E. 73, 75. The only representations of authority, according to Lind's testimony, which the defendant suffered Kaufman to hold out were such as might be inferred from the following: (1) Kaufman was Lind's immediate superior and in charge of the New York metropolitan sales territory; (2) he had invited Lind to be his assistant; (3) he had advised Lind of the amount of his starting salary and of subsequent increases; (4) he had

issued the interoffice memorandum of April 19, 1951; (5) he had told Lind after that date that "they" (Kaufman's superiors) were working out an incentive plan for him, and still later that this would amount to a 1% override commission on the sales of all the salesmen under Lind;[1] (6) Herrfeldt, Kaufman's superior and defendant's vice-president in charge of sales, had referred Lind to Kaufman to be advised as to his salary changes; and (7) Herrfeldt subsequently orally confirmed Kaufman's assurance that Lind would receive such a commission.

Gumpert v. Bon Ami Company, 2 Cir., 1958, 251 F.2d 735, as here, involved the issue of apparent authority on the part of a corporate official to bind the corporation to an employment agreement with the plaintiff. In that case evidence of the corporation's by-laws precluded a finding of *actual* authority on the part of the official to hire the plaintiff. The Court also rejected the argument that the agent was clothed with *implied,* as distinguished from *actual,* authority to hire the plaintiff by reason of the fact that the agent's position did not normally carry with it the inherent power to hire corporate officers or to make such an unusual contract as was claimed in that case. Finally, the Court found that Gumpert had failed to show that the official "was held out by defendant to possess the alleged authority" to bind the defendant in such an unusual employment contract. It stated that the agent's "alleged misrepresentations provide the sole basis for Gumpert's misplaced reliance on his apparent authority. It is axiomatic that such unauthorized representations of the agent are not a holding out by the principal and cannot be a basis for apparent authority." 251 F.2d at page 739.

Similarly in Brownell v. Tide Water Associated Oil Co., 1 Cir., 1941, 121 F.2d 239, the Court found no basis in the evidence to justify a jury in finding that the individual who attempted to bind the corporate defendant had apparent authority to enter into the agreement sued upon. Judge Mahoney said, at page 244: "The actions of the principal and the knowledge of a reasonable man in the position of the third person are the important factors in establishing apparent authority." He then defined "apparent authority" as "that authority which a reasonably prudent man, induced by the principal's acts and conduct, in the exercise of reasonable diligence and sound discretion, under similar circumstances with the party dealing with the agent, and with like knowledge, would naturally suppose the agent to have." In other words, in order to find apparent authority it is necessary to show: "That the principal has either so conducted his business as to give third parties the right to believe that the act in question is one he has authorized his agent to do, or that it is one agents in that line of business are accustomed to do." Id. at page 244. See also Bussing v. Lowell Film Productions, 1931, 233 App.Div. 493, 253 N.Y.S. 719, affirmed 259 N.Y. 593, 182 N.E. 194; O. A. Skutt, Inc., v. J. & H. Goodwin, 1937, 251 App.Div. 84, 295 N.Y.S. 772; Perry v. New York Life Insurance Co., Sup.1940, 22 N.Y.S.2d 696; and Berryhill v. Ellett, 10 Cir., 1933, 64 F.2d 253.

The evidence in the present case fails to disclose that Park & Tilford held out Kaufman in such a manner as to give Lind the right to believe that it had authorized Kaufman to give him the 1% override commission which he claims. It is axiomatic that any out-of-court declarations of Kaufman purporting to measure his authority cannot be binding on the defendant for the purpose of establishing his authority. Bussing v. Lowell Film Productions, Inc., supra; 1 Mech-

---

1. Although this latter conversation, which set the rate of the alleged incentive commission, was the only testimony upon which the jury verdict could have been molded, and was actually stricken from the record, both sides used this figure subsequently in the trial and the Court referred to it in its charge. It will be referred to in this opinion as established.

em, Law of Ágency (2d Ed.) § 988. Furthermore, there was nothing to show that the agreement was such as a person in Kaufman's position in defendant's line of business was accustomed to make. Brownell v. Tide Water Associated Oil Co., supra. The unusual commission feature of the claimed contract which the verdict shows would have almost quadrupled Lind's then salary, precludes an inference that Kaufman had implied authority to bind defendant by virtue of his position as Metropolitan Sales Manager. Gumpert v. Bon Ami Company, supra; Noyes v. Irving Trust Co., 1937, 250 App. Div. 274, 294 N.Y.S. 2, affirmed 275 N.Y. 520, 11 N.E.2d 323. However, the question of *implied* authority is not in this case, and Lind failed to show that Kaufman possessed express authority to make the claimed contract. By his own testimony Lind admits that Kaufman had no apparent authority to bind the corporation. With respect to the increased benefits, Kaufman merely reported to Lind that "they", meaning Kaufman's superiors, were working something out for him.

Furthermore, whatever Kaufman, Herrfeldt or even Brown (in the later negotiations for the purchase of the New Jersey distribution rights) may have subsequently represented to Lind about the "override" could not have misled Lind as of April 19, when he commenced his new duties, and clearly was not a ratification, since zero plus zero still equals zero. Gumpert v. Bon Ami Company, supra. Lind's reliance on Herrfeldt's statement must also fall for the similar reason that no proof was offered to show Herrfeldt was held out by the defendant to have authority to commit his company to the agreement Kaufman is alleged to have made, or to ratify Kaufman's act in so doing. In fact Lind testified that in discussing a raise in salary with Herrfeldt, albeit later than the transaction herein, Lind understood that the raise Herrfeldt promised him would necessarily have to be taken up with Arthur Schulte, president of the defendant.

It is also significant that Lind failed to show that the other two district managers who were appointed simultaneously with Lind pursuant to the April 19 memo, received a like bonus. Noyes v. Irving Trust Co., supra.

Even if we assume that there was apparent authority in Kaufman to promise Lind the commission claimed, the agreement upon which Lind relies was not sufficiently definite and specific to be enforceable against the defendant. "[A] promise too indefinite for enforcement will * * * be insufficient consideration for a counter-promise;" and "[e]ven a promise to pay 'a liberal and very substantial bonus' in addition to a fixed salary was held to impose no liability after the services had been rendered and the fixed salary paid." 1 Williston, Contracts, § 49. Lind herein does not rely upon *quantum meruit*, McDonald v. Acker, Merrall & Condit Co., 192 App. Div. 123, 182 N.Y.S. 607, but upon an alleged express, although integrated, contract. The memo of April 19th does no more than contemplate "a possible future agreement." See Lees v. Akshun Mfg. Co., 7 Cir., 1953, 205 F.2d 577, 578. When, according to Lind, Kaufman told him that "they are working something out for you" this was an admission that Kaufman was powerless to grant the "override" and evidences the persistence of the unenforceable indefiniteness of the consideration. Lind states that Kaufman told him in June he would receive the 1% commission, although the appointment as District Manager was effective on April 19. The evidence is silent respecting the date upon which the *commission arrangement* was to take effect and that upon which it was to terminate. The jury reported, as one of its findings, that the commission arrangement terminated on February 15, 1952. The evidence shows, however, that on January 31, 1952, when Lind accepted the transfer to New Jersey, his supervision over the employees upon whose gross sales he bases his claim was ended. Therefore the jury finding in that respect must be set aside as without any foundation in the evidence. The date of commencement is not determinable from the

contract itself, nor disclosed in the extraneous evidence. It is conjectural whether the commission arrangement was to commence April 19, 1951, May 1, June 1, July 1, or December 1. Such absence of evidence upon so essential a feature of the contract is fatal to its enforceability. Cf. Laseter v. Pet Dairy Products Co., 4 Cir., 1957, 246 F.2d 747.

One further point, which even if not disposed of, would have no bearing on the Court's opinion, is raised, and because not determined by the jury's verdict it is dealt with here. It concerns a document, dated January 31, 1957, signed by plaintiff and delivered to defendant's secretary upon the occasion of plaintiff's receipt of $758.34. The document states: "Received from Park & Tilford Distillers Corporation the sum of $758.34, less required deductions, and accept the aforementioned sum as full and final settlement of all wages due from the said Park & Tilford Distillers Corporation." Lind's testimony (the only evidence shedding any light on the paper) was that this amount represented compensation for unused vacation time, and that the corporation's secretary requested that he sign "this receipt for this vacation check pay." The Court referred to this document in its main charge as one of the circumstances which the jury had to consider in order to determine whether a contract existed. Neither party submitted any requests to charge concerning this particular point nor made any objection or suggestion to the reference to the document in the general charge. The effect of the writing was treated by the Court as presenting a jury question, Kissell v. Myer & Bush Co., E. & A. 1921, 96 N.J.L. 513, 115 A. 378; but no special finding thereon was requested, although the questions which were submitted to the jury were approved by both parties before submission. Failure of each of the parties to demand that this question be submitted to the jury for a special finding thereon constituted a waiver of right to jury trial thereof. The failure of the Court to make a finding upon the issue results in a presumed "finding in

accord with the judgment on the special verdict;" i. e., a finding that the writing was not a release of plaintiff's claim for commissions. Rule 49(a) Fed.R.Civ.P. At all events, upon review I find that the writing was not a release and did not evidence an accord and satisfaction. It was an acknowledgement of receipt of that to which the plaintiff was in any event entitled. Columbia Horse & Mule Commission Co. v. American Insurance Co., 6 Cir., 1949, 173 F.2d 773; Merrill v. Beaute Vues Corporation, 10 Cir., 1956, 235 F.2d 893.

The second aspect of the jury's findings must also be set aside. As stated, it awarded Lind $353 as reimbursement for moving expenses incurred by Lind when his position as New Jersey State Manager terminated on January 31, 1957. This finding was based on Lind's testimony that an unnamed assistant to Herrfeldt told Lind, when he was transferred to the New Jersey position, that if he ever had to move back to New York, the defendant would pay for the return. The assistant was not called as a witness and there was no evidence that Herrfeldt knew such statement had been made. No basis is disclosed for an inference that Lind's informant had express, implied or apparent authority to thus bind the corporation.

Defendant's motion for judgment notwithstanding the verdict is granted.

### Motion for New Trial

When, as here, a party avails himself of both alternative motions authorized by Rule 50(b), he is entitled to a ruling upon each of them. Montgomery Ward & Co. v. Duncan, supra. I have granted the motion for judgment n. o. v. because I conclude, upon the evidence, that the jury's findings are without any support therein and that plaintiff has failed to show that he is entitled to relief. The alternative motion for new trial is based upon defendant's contentions that the verdict for plaintiff is (1) contrary to the weight of the evidence, (2) contrary to law, and (3) a result of error in the admission of evidence.

Upon this motion I am called upon to set aside the verdict and grant a new trial if " 'the verdict is against the clear weight of the evidence, * * * or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.' " Eastern Air Lines, Inc., v. Union Trust Co., 99 U.S.App.D.C. 205, 1956, 239 F.2d 25, 29, quoting from Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 1941, 122 F.2d 350.

The evidence has been summarized in great detail. The jury's findings and the verdict as molded thereon are contrary to the weight of the evidence. They are also contrary to law, as has been determined in reaching the conclusion that defendant is entitled to judgment. For each of the foregoing reasons, the verdict and findings should be set aside, and, if the judgment n. o. v. is reversed, defendant is entitled to and is allowed a new trial.

■ Lastly, the defendant contends that it was error to admit in evidence a tabulated summary which purported to show the sales of liquor made by personnel under the plaintiff's supervision during the years 1950 and 1951. These sheets were concededly neither kept nor compiled in the regular course of the business of defendant, but were made up, according to plaintiff's testimony, partly by himself and partly by a fellow-employee or employees from copies of invoices covering the deliveries of the respective quantities involved in each sale. Irrespective of the ground urged in support of the objection to the admission of this exhibit, I conclude that it was inadmissible since it was not a record made by defendant or plaintiff in the regular course of business as contemplated by 28 U.S.C. § 1732. Neither was any showing made that this constituted the best evidence of those sales. These sheets, as was the case of numerous exhibits excluded in William Whitman Co. v. Universal Oil Products Co., D.C.Del.1954, 125 F.Supp. 137, represented the culling of data from various records of a party other than the party offering the same,

and were not tendered as an admission against the interest of the adversary party. It is, of course, obvious that if the figures in this exhibit had been excluded, there would have been no basis in the evidence for the computation of the total of the 1% override commission which the plaintiff claimed. I must therefore recognize that the admission of the exhibit constituted harmful error, requiring the allowance of a new trial.

Having, for the reasons above stated, concluded upon the entire record that the defendant is entitled to judgment as a matter of law, and also finding that plaintiff's verdict is against the weight of the evidence and resulted from an error in admission of evidence, an order may be entered for judgment for the defendant notwithstanding the verdict, which shall also provide that in the event such judgment shall be reversed on appeal, a new trial is awarded to the defendant.